UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TALIB MUSTAFA SHAKIR,<br><br>    Plaintiff,<br><br>        v.<br><br>ISAAC FULWOOD, JR.,<br><br>    Defendant. | Civil Action No. 14-831 (JEB) |

**MEMORANDUM OPINION**

Having already served twenty years of an indeterminate sentence of fifteen years to life imposed by the District of Columbia Superior Court, Plaintiff Talib Shakir is understandably eager to be paroled. The U.S. Parole Commission, however, has different ideas. Instead of releasing Shakir at his 2013 hearing, the Commission denied parole and set off his next hearing until 2018. Claiming that this decision was a product of the USPC's impermissible use of its 2000 guidelines, which were drafted after his sentence was imposed, Plaintiff has filed this *pro se* action to compel the Commission to revisit his parole – this time under the proper 1987 guidelines. Because the USPC did employ the earlier guidelines in its decision to set off Shakir's hearing, the Court will grant its Motion to Dismiss.

    **I. Background**

As almost all of the facts in this case are undisputed, the Court draws from both sides' pleadings and attached documents. Shakir, in fact, incorporates the Commission's official documents in his pleadings and never questions their authenticity.

1

Plaintiff was sentenced in the Superior Court in 1995 to an indeterminate term of fifteen years to life for second-degree murder and associated crimes. See Mot., Exh. 1 (Sentence Monitoring Computation Data) at 1. He first came up for parole in May 2010, see id. at 2, but was denied, and his next hearing was set for August 2013. See Mot., Exh. 3 (2010 Notice of Action). At this 2013 hearing, although the examiner recommended parole, see Mot., Exh. 4 (Post-Hearing Assessment), she was overruled, parole was denied, and Shakir was given a five-year "set-off," meaning his next hearing was set for 2018. See Mot., Exh. 5 (2013 Notice of Action).

Plaintiff filed this action on May 8, 2014, claiming that the Commission "retroactively appl[ied] the USPC's own 2000 Parole Guidelines and practices, in violation of the Ex Post Facto Clause, so as to significantly increase the risk that Plaintiff would serve a longer term of incarceration." Compl. at 2. Shakir contends that the Commission should have employed the 1987 guidelines, which were in effect at the time of his initial sentencing, rather than the ones promulgated in 2000. See id. at 2-3. He seeks an order holding the application of the 2000 guidelines unconstitutional and an injunction requiring the USPC to hold a new hearing under the 1987 guidelines. See id. at 3. Defendant has now moved to dismiss.

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v.

United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).   The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact.   See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).   Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.   The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.   Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).   Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."   Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In evaluating the sufficiency of Plaintiff's Complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."   Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. Analysis

#### A. Application of 1987 Guidelines

In moving to dismiss, the Commission's principal argument is simple: it asserts that, contrary to Shakir's allegations, the undisputed documentation proves that it <u>did</u> apply the 1987 guidelines at his 2013 parole hearing. As a result, he has nothing to complain of. Before considering the question, a brief primer on the history of the two sets of guidelines may prove of value.

Prior to the 1997 Congressional enactment of the National Capital Revitalization and Self-Government Improvement Act, codified at D.C. Code § 24-101 *et seq.*, the D.C. Parole Board conducted hearings for offenders convicted in the Superior Court. The Act abolished the Board and transferred parole hearings to the USPC, which was instructed to follow "the parole laws and regulations of the District of Columbia." <u>Id.</u> § 24-131(c). Prior to such transfer, the Board relied on guidelines promulgated in 1987; as a result, the Commission initially continued to employ those when it considered D.C. offenders. Yet, as Judge Ellen Huvelle of this District explained in a thorough and detailed opinion on the history of the different guidelines, the Commission subsequently "drafted new parole regulations and guidelines (the '2000 Guidelines') that it applied to any [D.C.] offender who received an initial parole hearing after August 5, 1998." <u>Sellmon v. Reilly</u>, 551 F. Supp. 2d 66, 72 (D.D.C. 2008) (citation omitted).

In <u>Sellmon</u>, certain plaintiffs who (like Shakir) were sentenced before the promulgation of the 2000 guidelines argued that their parole hearings should be governed by the 1987, not the 2000, guidelines. They claimed that differences between the two "g[a]ve rise to a compelling inference that the application of the 2000 Guidelines significantly increased plaintiffs' risk of

4

serving lengthier terms of incarceration." Id. at 87. Judge Huvelle ultimately agreed that they had "made a compelling showing that there are facial differences between [the two guidelines] that could give rise to an *ex post facto* violation in individual cases." Id. at 88 (footnote omitted). She ultimately required the USPC to conduct parole hearings for those prisoners pursuant to the 1987 guidelines. See id. at 99.

The Commission asserts that it took this ruling to heart. In fact, it promulgated a rule requiring that the 1987 guidelines be applied to any offender who committed his crime between March 4, 1985, the effective date of the 1987 guidelines, and August 4, 1998, the last day the D.C. Board exercised authority before transfer to the USPC. See 74 Fed. Reg. 58540 (Nov. 13, 2009) (final rule). As Shakir indisputably falls into this category – his crime occurred in 1993 − the 1987 guidelines should have been applied to him. So were they?

The answer is plainly yes. Shakir's Notice of Action, dated August 1, 2013, expressly states in the first paragraph of the "Reasons" section: "You continue to be scored under the 1987 guidelines of the D.C. Board of Parole." 2013 Notice of Action at 1. This would appear to dispose of the question.

Shakir takes issue with this explanation, however, insofar as the USPC scheduled his next hearing for 2018. More specifically, the sole contention in his Complaint is that "Defendant could not depart from the prescriptions of the 1987 Guidelines and give Plaintiff a five (5) year set-off. Such a departure by Defendant would only have been possible under the USPC's own 2000 Guidelines . . . ." Compl. at 3. Plaintiff's construction of the 1987 guidelines – and thus the conclusion he draws – is mistaken. It is true that these guidelines provided in part: "When the Board denies parole and orders reconsideration for a person serving a maximum sentence of

five (5) years or more, reconsideration shall <u>ordinarily</u> occur within twelve (12) months." 28 DCMR § 104.2 (emphasis added).  Yet, such timing is not mandatory, as another provision makes clear: "Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate."  <u>Id.</u>, § 104.11.

Were there any doubt that this latter section permits a set-off beyond one year, the D.C. Court of Appeals has laid that to rest.  <u>See</u> <u>Jones v. Braxton</u>, 647 A.2d 1116, 1117 (D.C. 1994) (§ 104.2 "is clearly not mandatory," as § 104.11 "expressly authorizes the Board to disregard the suggested timeframes"); <u>Hall v. Henderson</u>, 672 A.2d 1047 (D.C. 1996) (affirming Board's set-off of five years under 1987 guidelines).  Shakir's contention that the five-year set-off is impermissible under the 1987 guidelines thus cannot prevail.

Although he does not raise the claim in his Complaint, Plaintiff also seems to maintain in his Opposition that, regardless of the length of the set-off, no departure from the examiner's recommendation was justified under the 1987 Guidelines.  He is incorrect.  The 2013 Notice of Action explains that a departure was warranted largely because Shakir's offense had "involved a vulnerable victim murdered during a robbery."  <u>See also</u> <u>id.</u> (set-off ordered "due to your involvement of [*sic*] the death of two innocent victims and your history of weapons involvement").  Although Shakir claims that this was an impermissible basis under the 1987 guidelines, he ignores the fact that they allow a departure where unusual cruelty to victims is involved.  <u>See</u> 28 DCMR § 204.22.  Given the discretion afforded the USPC, <u>see, e.g.</u>, <u>Ellis v. District of Columbia</u>, 84 F.3d 1413, 1419-20 (D.C. Cir. 1996), its description of the basis for its departure is sufficient even though the word "cruelty" is not used.

6

B.  Other Claims

To the extent Plaintiff is also asserting a separate count under the APA, it meets the same fate.  As best the Court can discern, the APA claim is to "compel agency action unlawfully withheld," Compl. at 8 – that is, to "[d]eclar[e] that Defendant's retroactive application of the USPC's 2000 Guidelines, and/or failure to fully apply the 1987 Guidelines, to Plaintiff's parole [re]hearing violates the APA."  Id. at 9 (third alteration in original).  As the USPC did in fact apply the earlier guidelines, this count similarly founders.

In his Opposition, Shakir also claims that the Commission has violated the separation-of-powers doctrine by lengthening his sentence beyond what the original Superior Court judge had imposed.  See Opp. at 9-10.  Such an argument neglects that the sentence issued here was indeterminate, meaning it offered a range of fifteen years to life.  Shakir was first eligible for parole after the minimum term had elapsed and could serve no more than the maximum term. See D.C. Code § 24-403(a) (Superior Court offender given indeterminate sentence "may be released on parole . . . at any time after having served the minimum sentence").  As the USPC has not lengthened his sentence beyond the life possibility imposed by the Superior Court, it has not infringed on the judicial role or otherwise violated the Constitution's separation of powers. See, e.g., Kingsbury v. Fulwood, 902 F. Supp. 2d 51, 59 (D.D.C. 2012) (In a case in which a prisoner was serving a sentence of 20 years to life, "there can be no usurpation of judicial authority by the USPC where each parole action, and the additional time the plaintiff has been ordered to serve, has occurred prior to the expiration of the life sentence imposed by the Superior Court.").

**IV. Conclusion**

The Court, accordingly, will issue a contemporaneous Order granting the Commission's Motion and dismissing the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 11, 2015